Law Office of Chad D. Morgan
**Chad D. Morgan, Esq. SBN 291282**
P.O. Box 1989 PMB 342
40729 Village Drive #8
Big Bear Lake, CA 92315
Tel: (951) 667-1927
Fax: (866) 495-9985
chad@chadmorgan.com

**Alexander E. Tomescu, Esq. SBN 283840**
30011 Ivy Glenn Drive, Ste. 223
Laguna Niguel, CA 92677
Tel: (949) 495-3314

Attorneys for Plaintiffs
James V. Lacy and United States Justice Foundation

In the United States District Court
for the Central District of California,
Southern Division

| | |
|---|---|
| **James V. Lacy** and **United States Justice Foundation**, <br><br> Plaintiffs, <br><br> vs. <br><br> **United States Department of State**; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: <br> 8:22-cv-01065-DOC-KES <br><br> **Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees** <br><br> **Hearing** <br> Date:   Aug. 21, 2023 <br> Time:   8:30 a.m. |

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... 2
Table of Authorities ......................................................................................................3
Memorandum of Points and Authorities ...................................................................5
Statement of Case ..........................................................................................................5
Argument ......................................................................................................................10
   I.   Plaintiffs are eligible for an award of attorneys' fees. ............. 10
   II.   Plaintiffs are entitled to an award of attorneys' fees. ........... 12
      A.   Plaintiffs litigated this FOIA request for the public benefit. ............................. 12
      B.   Plaintiffs did not receive a public benefit from this action. ............................... 13
      C.   Plaintiffs' interest in the records does not weigh against a fee award ................. 14
      D.   There was no reasonable basis in law for the government's conduct, which gives rise to attorneys' fees. ....................................................................................... 14
   III.   The Court should Award Attorneys' Fees and Costs in the Amount of $81,945.00. ......................................................................................... 15
      A.   The reasonable hourly rate for Plaintiffs' counsel is $595 for Chad Morgan and $485 for Alexander Tomescu. ................................................................................ 16
      B.   Morgan and Tomescu reasonably expended 120.7 and 19.9 hours, respectively, representing Plaintiffs' interests in this case. ....................................................... 17
Conclusion ...................................................................................................................18
Certificate of Compliance ........................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Sullivan*, 916 F.2d 492 (9th Cir.1990) .................................................... 17

*Campaign for Responsible Transplantation v. U.S. Food & Drug Admin.*, 593 F. Supp. 2d 236, 242 (D.D.C. 2009) ................................................................ 13

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 820 F. Supp. 2d 39 (D.D.C. 2011) ................................................................................................ 13

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 542 U.S. 1 (2001) .......... 15

*Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338 (D.D.C. 2014) ................................................................................................... 13

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223 (D.D.C. 2015) .......... 13

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216 (D.D.C. 2011) ................................................................................................... 13

*Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016) ................................................................................................ 13

*Hiken v. Dep't of Def.*, 836 F.3d 1037 (9th Cir. 2016) ........................................ 15, 16

*Long v. IRS*, 932 F.2d 1309 (9th Cir. 1991) ..................................................... 10, 15

*Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055 (C.D. Cal. 2008) ................................................................................................ 12, 13, 14

*O'Neill, Lysaght & Sun v. Drug Enf't Admin.*, 951 F. Supp. 1413 (C.D. Cal. 1996) 10, 17

*Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009) ............................ 10

*Poulsen v. Dep't of Def.*, 994 F.3d 1046 (9th Cir. 2021) .......................................... 11

*Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) ................... 17

*Schoenberg v. Fed. Bureau of Investigation*, 2 F.4th 1270 (9th Cir. 2021) ....... 10, 12, 14

*State of N. D. ex rel. Olson v. Andrus*, 581 F.2d 177 (8th Cir. 1978) ........................ 15

*Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301 (D.D.C. 2020) . 13

**Statutes**

5 U.S.C. § 552 ................................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs succeeded in this FOIA case first by eliciting Defendant's response to their FOIA requests, then by forcing Defendant to conduct broader searches. Those broader searches resulted in Defendant's disclosure of 140 pages of previously withheld records. Plaintiffs' final success came a bit later when Defendant voluntarily released previously redacted material. These successes were substantial despite the Courts' eventual judgment that the remaining redactions were proper.

Getting to this point was not easy. As a result of Defendant's conduct during the litigation, Plaintiffs' counsel expended considerably more time than might be necessary in more typical cases. From filing this action to receipt of all documents Defendant disclosed, Plaintiffs' lead counsel expended 61.2 hours, primarily focused on discovery and other activities relating to the reasonableness of Defendant's search. This time included several full days in court trying to resolve these issues, one of which was waiting for Defendant to produce a *Vaughn* Index after it had disregarded several prior orders for it to do so.

Once those issues were resolved, Plaintiffs' counsel then expended 72.4 hours on the parties' cross-summary judgment motions. That time, however, has been discounted to just 35 hours. In all, Plaintiff claims time totaling 120.7 hours for Chad Morgan and 19.9 hours for Alexander Tomescu. Their fees, along with costs, total $81,945.00.

## STATEMENT OF CASE

Plaintiffs submitted two FOIA requests on February 26, 2020 and a third on February 28, 2022.[1] Defendant's processing of the first request took over two years; its processing of the other two took more than six months.[2] Defendant's

---

[1] Order Granting in Part Plfs.' Mot. for Summ. J. and Denying Def.'s Mot. for Summ. J., May 3, 2023 (Dkt. 45) (MSJ Order), 5:17, 8:09, 10:10.

[2] MSJ Order, 4:01-03; *see also id.*, 5-6, 8-9, 10-12.

response to two of the three requests came after the filing of this lawsuit.[3] In all three instances, Defendant's response was the same: "We conducted a search. We located no responsive records."[4]

In this litigation, Plaintiffs challenged Defendant's determination that it did not have responsive records and sought discovery for that purpose.[5] In the early stages of this litigation, Defendant conducted "supplemental searches" and "identified, for the first time, potentially responsive documents," but maintained that no responsive documents had been withheld.[6] Defendant ultimately disclosed approximately 140 pages of records responsive to the three requests on an intermittent basis from December 2022 to March 2023.[7] On page 14 of its order granting partial summary judgment to Plaintiffs, the Court summarized these issues:

> Prior to this lawsuit, the State Department made a determination as to only one request—the Second FOIA Request. After Plaintiffs filed this action, the State Department made determinations on the First FOIA Request and Third FOIA Request. Their response was the same for each request: No responsive records were found. Through this litigation, the Department conducted supplemental searches, located responsive documents, and ultimately produced approximately 140 pages to Plaintiffs.

The Court ultimately concluded that Plaintiffs were entitled to declaratory relief: "The Department of State violated FOIA by failing to timely respond to Plaintiffs' three FOIA requests."[8] In so ruling, the Court noted that the State

---

[3] MSJ Order, 4:03-04.
[4] MSJ Order, 4:04-05.
[5] MSJ Order, 4:07-14.
[6] MSJ Order, 4:14-16.
[7] MSJ Order, 4:23-25; *see also id.*, 7, 9, 13-14.
[8] MSJ Order, 24: 06-08.

Department's position "continued to fluctuate."[9] For example, in response to Plaintiffs' third request, Defendant's counsel once sated, in writing, that Defendant had identified records responsive to Plaintiffs' third request and that the documents would be disclosed.[10] Defendant later changed its position: its counsel said, "there has been a change," those records "now appear[ed] to be non-responsive."[11] Then, on January 13, 2023—days before it was obligated to respond to discovery on the subject—Defendant changed its position again and the disclosed the responsive then non-responsive records.[12]

Defendant initially claimed that it changed its position on these records because its October 2022 determination was preliminary and further review showed that the records did not contain calendar entries.[13] It did not deviate from that position when it eventually disclosed the records. Instead, it argued that it was disclosing the records irrespective of the fact that they were not responsive.[14] But the documents *did contain* calendar entries and were plainly responsive to Plaintiffs' Third FOIA Request for "written calendar entries … for Mr. Anthony Blinken … that reference, and or include … Hunter Biden."[15]

The Court ultimately described Defendant's delays as "egregious," and that it not only failed to make determinations within the time frame FOIA requires but

---

[9] MSJ Order, 22:02.

[10] Decl. of Chad Morgan in Support of Plfs.' Mot. for Summ. J., Mar. 13, 2023 (Dkt. 34-3) (Morgan MSJ Decl.), ¶ 5; Dkt. 34-5, p. 25 (Plfs.' Ex. 8).

[11] Dkt. 34-5, p. 28 (Plfs.' Ex. 9) (underline in original).

[12] Morgan MSJ Decl., ¶ 7; Dkt. 34-5, pp. 33 (Plfs.' Ex. 10), 35 *et seq.* (Plfs.' Ex. 11) (Defendant's January 13, 2023 disclosure); *see also* Morgan MSJ Decl., ¶ 8; Dkt. 34-5, p. 83 *et seq.* (Ex. 12: Defendant responded to discovery on January 17, 2023).

[13] Dkt. 34-5, p. 99 (Plfs.' Ex. 12, p. 17). 7

[14] *Id*.

[15] MSJ Order, 10:10-18 (the request); *see also* Dkt. 34-5, pp. 49, 63, 66 (Plfs.' Ex. 11: responsive calendar entries).

also that it did not make determinations "until months into the litigation."[16] Defendant failed to explain these delays and contradicted itself at every stage of this case.[17]

    Looking at the development of this case, the parties' Joint Scheduling Report was significant turning point. Plaintiffs' counsel spent a significant amount of time on Plaintiffs' portion of that report, and the parties debated it vigorously before submitting it. Morgan Decl., ¶ 14. As of that time, Defendant believed it was done: It had completed its search, there were no responsive documents, and Plaintiffs were not entitled to anything.[18] Discovery was the greatest point of contention, and Plaintiffs used that report to make its case that discovery was necessary to evaluate the veracity of Defendant's contention that it did not possess responsive documents.[19]

    At the scheduling conference, the Court mostly agreed with Plaintiffs. It ordered Defendant to prepare a *Vaughn* Index—which Defendant opposed—and reserved the question of discovery for a future hearing.[20] When Defendant failed to produce a *Vaughn* Index,[21] the Court ordered it to respond to Plaintiffs' interrogatories[22]. Rather than respond to interrogatories on the subject, Defendant disclosed the records.[23]

---

[16] MSJ Order, 22:04-08.

[17] MSJ Order 23:15-17; see also *id*. at 23:20-24:02 (Defendant described a first-in, first-out FOIA policy but could not explain why one of Plaintiffs' February 26, 2020 FOIA requests was processed more than a year earlier than another request submitted the same day).

[18] Joint Rule 26(f) Report (Dkt. 17), pp. 2-4.

[19] *Id*. at pp. 6-8.

[20] Minute Order, Dec. 5, 2022 (Dkt. 19), p. 3.

[21] *See* Def's Notice of Filing Agency Aff., filed Dec. 20, 2022 (Dkt. 20), p. 2:12

[22] Minute Order, filed Dec. 20, 2022 (Dkt. 25); *see also* Dkt. 21 (Notice of Pls.' Proposed Discovery) & 21-1 (Pls.' First Set of Proposed Interrogatories).

[23] Morgan MSJ Decl. ¶ 7; Dkt. 34-5, pp. 33 (Plfs.' Ex. 10), 35 et seq. (Plfs.' Ex. 11.)

From December 2022 to March 2023, there was a series of supplemental searches that arose mostly from Defendant's discovery responses and Plaintiffs' contentions at status conferences. For example, in addition to ordering Defendant to respond to Plaintiffs' discovery requests, the Court's December 20, 2022 order also directed Defendant to broaden is search.[24] But as of January 13, 2023, Defendant had still failed to provide the *Vaughn* Index the Court had ordered.[25] When the parties met on January 23, 2023 for a Status Conference, the Court ordered Defendant to produce a *Vaughn* Index that afternoon, which it did.[26]

Prior to the January 23 conference, the Court had ordered the parties to submit a joint status report. Given Defendants' repeated failure to provide a *Vaughn* Index, the parties had substantial debate over the contents of that report. Morgan Decl., ¶ 15. It culminated with separate reports in one document.[27] Defendant's report was on pages 2-5 and included a proposed timeline for summary judgment briefing.[28] In Plaintiffs' portion of the report, pages 5-15, they were not ready to suggest a briefing schedule because, *inter alia*, Defendant maintained its refusal to provide a *Vaughn* Index. When the Court ordered Defendant to produce a *Vaughn* Index that same day, among other orders, it resolved many of Plaintiffs' concerns. Morgan Decl., ¶ 15. As such, that day's order for a briefing schedule moved this case closer to resolution. When the parties came back on February 21, 2023, Defendant had finally complied with all the

---

[24] Minute Order, filed Dec. 20, 2022 (Dkt. 25).

[25] *See* Dkt. 34-5, pp. 95:04-13, 101:08-20 (Plfs.' Ex. 12, pp. 13, 19); *see also* Plfs.' Mot. for Summ. J., filed Mar. 13, 2023 (Dkt. 34-1), p. 8.

[26] Morgan MSJ Decl. ¶ 9; Preliminary *Vaughn* Index, Dkt. 27-1; Declaration of Susan Weetman, filed Jan. 23, 2023 , (Dkt. 27) (Second Weetman Decl.); Minute Order, filed Jan. 23, 2023 (Dkt. 28).

[27] Joint Status Report, filed Jan. 19, 2023 (Dkt. 26).

[28] *See* Dkt. 26.

Court's orders, and the parties were ready to brief their summary judgment motions.

A primary issue in the parties' cross-summary judgment motions was material redacted from Defendant's document production based on FOIA Exemptions 5 and 6. Prior to the hearing, the parties resolved a portion of that dispute. As described in a joint status report following the hearing on those motions, Defendant agreed to disclose some material it had previously withheld based on the deliberative process privilege.[29]

## ARGUMENT

"To obtain an award of attorney fees under the FOIA, a plaintiff must demonstrate both eligibility and entitlement to the award." *Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009), citing *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991).

### I. Plaintiffs are eligible for an award of attorneys' fees.

A FOIA plaintiff who "substantially prevailed" on a claim is eligible for an award of attorneys' fees. *Schoenberg v. Fed. Bureau of Investigation*, 2 F.4th 1270, 1275 (9th Cir. 2021); *see also* 5 U.S.C. § 552(a)(4)(E)(i). Under FOIA, a plaintiff who substantially prevailed is a plaintiff who obtains relief through either (1) a judicial order or enforceable agreement, or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see also Schoenberg* at 1275.

Courts previously considered two threshold considerations to answer this question: (1) was the FOIA action necessary to obtain the information, and (2) whether the action "had a 'substantial causative effect' on the ultimate receipt of that information." *See O'Neill, Lysaght & Sun v. Drug Enf't Admin.*, 951 F. Supp. 1413, 1418 (C.D. Cal. 1996) (*O'Neill*), citing *Long*, 932 F.2d at 1313. But 2007

---

[29] Joint Status Report Following Hearing on Summ. J. Motions, Apr. 4, 2023 (Dkt. 42).

amendments to FOIA abrogated those tests. *Poulsen v. Dep't of Def.*, 994 F.3d 1046, 1050 (9th Cir. 2021). Under today's law, "a complainant need not show a causal connection between the FOIA lawsuit and the government's change in position to establish that he has 'substantially prevailed.'" *Id.*

On one hand, Defendant voluntarily changed its position in several ways. First, with respect to Plaintiffs' first and third requests, it took this lawsuit to compel Defendant's voluntary search for records. Second, after disclaiming possession of records responsive to all three of Plaintiffs' requests, Defendant voluntarily disclosed records in response to each. This disclosure included the documents Defendant identified as responsive before it later withheld them as nonresponsive. Third, after full briefing of the summary judgment motions, Defendant voluntarily disclosed material that it previously redacted.[30] None of this would have been possible without filing this lawsuit, pursuing discovery, and briefing Plaintiffs' summary judgment motion seeking disclosure of the redacted material.

On the other hand, this Court also entered judgment in Plaintiffs' favor. In doing so, the Court explicitly noted Defendant's inexplicable delays and fluctuating position. Additionally, prior to entry of judgment, the Court ordered Defendant to conduct various supplemental searches. Those searches helped establish the reasons why Plaintiffs ultimately accepted the adequacy of Defendant's search, which was among the reasons why the Court granted summary judgment in Defendant's favor on that issue. Without those interim orders, which changed the relationship between the parties,[31] the summary judgment motion might have been decided differently. The fact of this judgment and prior orders is an alternative basis for a conclusion that Plaintiffs are eligible for an award of attorneys' fees.

---

[30] *See* Joint Status Report Following Hearing on Summ. J. Motions, Apr. 4, 2023 (Dkt. 42).

[31] *See Poulsen*, 994 F.3d .at 1053.

## II. Plaintiffs are entitled to an award of attorneys' fees.

District courts have discretion to determine whether a plaintiff is entitled to fees. *Schoenberg*, 2 F.4th at 1275. To answer this question, they consider and balance four factors to determine whether a successful FOIA plaintiff is entitled to attorneys' fees: "(1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." *Id.* at 1275-76.

### A. Plaintiffs litigated this FOIA request for the public benefit.

"Under the first criterion a court would ordinarily award fees … where … a publication or a public interest group was seeking information to further a project benefiting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government." *Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1058 (C.D. Cal. 2008) (*L.A. Gay & Lesbian Cmty. Servs. Ctr.*).

Plaintiff USJF is "a nonprofit public interest, legal action organization."[32] USJF and James V. Lacy, acting on its behalf, requested records and litigated this FOIA case to evaluate issues relating to Hunter Biden, his father, President Joe Biden, their ties to foreign interests, and other matters of public concern. On this topic, USJF previously published a 72-page open source "Biden-Ukraine Corruption Inquiry Report."[33] Related to this case, there had been media reports that a someone found Hunter Biden's laptop and discovered emails on it, which had been released into the public domain. Morgan Decl., ¶ 50. The source of that information had been questioned and claims made that the emails purportedly found on Hunter Biden's laptop had been faked. *Id*. But emails disclosed in this

---

[32] Lacy MSJ Decl., ¶ 7 (Dkt. 34-4, p. 3).
[33] Lacy MSJ Decl., ¶ 11 (Dkt. 34-4, pp. 3-4).

case were identical to emails reportedly found on Hunter Biden's laptop. *Id.* This tends to support a conclusion that the Hunter Biden laptop emails are genuine. Those emails and related subjects have been the subject of Congressional inquiries and other public debate such that there is an unquestionable public benefit. Morgan Decl., ¶ 52.

**B. Plaintiffs did not receive a public benefit from this action.**

"Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group but would not if it was a large corporate interest (or a representative of such an interest)." *L.A. Gay & Lesbian Cmty. Servs. Ctr.*, 559 F. Supp. 2d at 1060. USJF is a nonprofit public interest group—not a corporate interest—so this factor weighs in favor of a fee award.

In a prior filing, Defendant seemed to criticize Plaintiffs' use of this case in support of fundraising appeals necessary to support their operations on behalf of the public, both related to public interest litigation as well as other research activities. This is not the type of commercial benefit that would weigh against a fee award to Plaintiffs. *See, e.g., Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 234 (D.D.C. 2015). To the contrary, numerous courts have recognized that nonprofit public interest organizations do not receive commercial benefits from their work.[34] Plaintiffs have not found one case where a nonprofit organization was deemed to have a commercial interest in the result of a FOIA request.

---

[34] See *Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 315–16 (D.D.C. 2020); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011); *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011); *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 347 (D.D.C. 2014); *Campaign for Responsible Transplantation v. U.S. Food & Drug Admin.*, 593 F. Supp. 2d 236, 242 (D.D.C. 2009); *Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 45 (D.D.C. 2016).

### C. Plaintiffs' interest in the records does not weigh against a fee award.

This is often considered with the second factor. *L.A. Gay & Lesbian Cmty. Servs. Ctr.*, 559 F. Supp. 2d at 1060. "Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature." *Id*. As discussed above, Plaintiffs' interest in this case and the underlying government records is purely in the public interest and was not frivolous.

### D. There was no reasonable basis in law for the government's conduct, which gives rise to attorneys' fees.

This factor can weigh in the government's favor only if the government "had a colorable basis in law" to withhold the documents. *Schoenberg*, 2 F.4th at 1276. Any other reason, including the avoidance of embarrassment weighs against the government in this analysis. *Id*.

There are several bases for fees in this case, and this factor does not weigh in Defendant's favor on any of them. Defendant's delay in responding to Plaintiffs' request was not supported by "a colorable basis in law." To the contrary, on this issue, the Court entered judgment that Defendant violated FOIA. The same is generally true as to the scope of the search, which Plaintiffs conceded as sufficient only *after* several orders from the Court directing a broader search. The fact of those orders shows that there was no colorable basis of law for Defendant's narrow search.

This leaves the redacted documents Defendant disclosed after the parties completed their summary judgment briefing. Each document Defendant disclosed had been redacted based on the deliberative process exemption. *See* Plfs.' Opp. to Def.s' Mot. for Summ. J., filed Mar. 20, 2023 (Dkt. 37), pp. 8-12. The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 542 U.S. 1, 8 (2001) (*Klamath Water Users*). Plaintiff argued that the privilege did not apply to several documents which had been disclosed to government outsiders, a problem of "selective disclosure [that] is offensive to the purposes underlying the FOIA and intolerable as a matter of policy." *State of N. D. ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir. 1978).

After full briefing on the subject,[35] Defendant agreed to disclose the records. By that point, it should be presumed that briefing convinced Defendant of its error and that it agreed to disclose the documents on that basis. If Defendant genuinely believed otherwise or had a colorable basis to defend the redactions, why not let the Court decide the issue—Defendant had already done all the work necessary to present the issue.

## III. The Court should Award Attorneys' Fees and Costs in the Amount of $81,945.00.

As discussed above, Plaintiffs are both eligible for and entitled to recover fees. As such, a fee award is mandatory. *Long v. IRS*, 932 F.2d at 1314. The customary method for awarding fees is the lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a reasonable hourly rate. *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016). There is a strong presumption that the lodestar figure represents a reasonable award, and the figure should only be departed from if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary. *Id*.

---

[35] That briefing included evidence and argument that the deliberative process emails in question had in fact been communicated to government outsiders. Plfs.' Opp. to Def.'s Mot. for Summ. J. (Dkt. 37), pp. 8-11.

As discussed below, Plaintiffs request fees as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Chad Morgan | 120.7 | $595 | $71,816.50 |
| Alexander Tomescu | 19.9 | $485 | $9,651.50 |
| Costs | | | $477.00 |
| **Total** | | | **$81,945.00** |

The costs identified above include the $402 filing fee and $75 for service of process. Morgan Decl., ¶ 29.

### A. The reasonable hourly rate for Plaintiffs' counsel is $595 for Chad Morgan and $485 for Alexander Tomescu.

The reasonable rate should generally be guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Hiken*, 836 F.3d at 1044. In general, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Id*.

The market rate for lead counsel in comparable cases starts at $650 per hour. Morgan Decl. ¶ 40. Morgan's rate is and has been considerably less than that. From 2017 to 2020, it was generally fixed at $425 per hour. *Id*. at ¶ 41. An adjustment for cost-of-living increases from 2017 to today should put Morgan's hourly rate at $516. *Id*. at ¶ 44. The additional increase to $595 per hour is an experiential increase of just three percent per year. *Id*. A recent award at $500 per hour—or $575 per hour with the 1.15 multiplier—is still less than the reasonable market value of Morgan's services. *Id*. at ¶¶ 46-47. The increase to $595 is necessary to ensure that plaintiffs pursuing public interest litigation have access to representation, *id*. at ¶¶48-49, and gives full effect to Morgan's substantial legal and non-legal experience in this practice area, *id*. at ¶¶ 30-39.

While Morgan seeks fees at close to his market rate, Tomescu seeks fees that are much less. His $485 hourly rate is far below market value for comparable services. Tomescu Decl., ¶ 5; Morgan Decl., ¶ 40.

**B. Morgan and Tomescu reasonably expended 120.7 and 19.9 hours, respectively, representing Plaintiffs' interests in this case.**

In paragraphs 7 through 25 of his declaration, Morgan describes the reasonableness of the time he expended in considerable detail. The 61.2 hours expended prior to February 14, 2023 was necessary to obtain the documents Plaintiffs received. While this was a lot of time, it was time reasonably expended as a direct result of Defendant's conduct. See Morgan Decl., ¶¶ 11-15. Courts in similar situations have awarded fees for more time that might be reasonable in different circumstances when the increase is a result of the defendant's conduct. *O'Neill*, 951 F. Supp. at 1426.

Morgan's billing for time expended after February 14, 2023 is more modest. While he expended 72.4 hours litigating the parties' cross-summary judgment motions, he has discounted that time substantially, billing for only 35 of those hours. Morgan Decl., ¶¶ 16-24. His discounts seek to apportion time between Plaintiffs' successful and unsuccessful claims, *id*. at ¶¶ 21-22, and write-off time that should not be billed at all, *id*. at ¶ 20.

In addition to time expended litigating the merits, Morgan is entitled to recover the 24.5 hours he reasonably expended (and will expend) litigating fees. (Morgan Decl., ¶ 25; see also *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 878 (N.D. Cal. 2012), citing *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir.1990) ("The district court may award attorney fees at market rates for the entire course of litigation, including time spent preparing, defending, and appealing the two awards of attorney fees.") Morgan's time on fees includes both the time expended to file this motion as well as the time he anticipates to file a reply and appear at the hearing on the motion. Morgan Decl., ¶ 25.

In addition to Morgan's time, Tomescu's 19.9 hours were reasonably expended. His entries were carefully scrutinized to remove duplicative billing and retained only those where he added value to the litigation. Tomescu Decl., ¶ 3; Morgan Decl., ¶ 26. Tomescu's involvement in and familiarity with the underlying factual issues ultimately reduced the amount of time Morgan would have expended on this case. Morgan Decl., ¶¶ 27-28.

## CONCLUSION

As discussed above, Plaintiffs were successful in this action to enforce their rights under FOIA. The work Plaintiffs' attorneys performed in this case was necessitated by Defendant's conduct during the litigation, including its inconsistent positions and its refusal to comply with Court orders. Plaintiffs have reasonably reduced the hours billed to account for unsuccessful claims, and should be awarded attorneys' fees and costs in the amount of $81,945.00, as requested.

DATE: July 21, 2023

Respectfully Submitted,
LAW OFFICE OF CHAD D. MORGAN
By:   */s/ Chad D. Morgan*
Chad D. Morgan Esq.,
Attorney for Plaintiffs

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs James V. Lacy and United States Justice Foundation, certifies that the memorandum of points and authorities contains 5,194 words, which complies with the word limit of L.R. 11-6.1.

DATE: July 21, 2023

Respectfully Submitted,
LAW OFFICE OF CHAD D. MORGAN
By:     /s/ Chad D. Morgan
Chad D. Morgan Esq.,
Attorney for Plaintiffs