1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

LACY ET AL.,

          Plaintiffs,

    v.

U.S. DEPARTMENT OF STATE,

         Defendant.

Case No. 8:22-cv-01065-DOC-KES

**ORDER GRANTING PLAINTIFFS'**

**MOTION FOR ATTORNEYS' FEES**

**[50]**

1    Before the Court is Plaintiffs James Lacy and United States Justice Foundation's

2    ("Plaintiffs") Motion for Attorneys' Fees and Costs ("Motion" or "Mot.") (Dkt. 50).

3    Having reviewed the moving papers and considered the parties' arguments, the Court

4    GRANTS Plaintiffs' Motion.

5    **I.    BACKGROUND**

6    The facts and relevant procedural history are set forth in the Court's prior orders.

7    ("First Order") (Dkt. 45); ("Second Order") (Dkt. 47). To summarize, this action arises

8    out of three Freedom of Information Act (FOIA) requests Plaintiffs submitted to the State

9    Department between 2020 and 2022. Plaintiffs' requests sought, in part, information

10    related to Hunter Biden's activities in Ukraine and any influence he tried to exert "over

11    official government policy due to his father's office." First Order at 11.

12    Plaintiffs submitted two FOIA requests on February 26, 2020, and a third on

13    February 28, 2022. *See* First Order at 6-12. The State Department's processing of the first

14    request took over two years; its processing of the other two requests took over six

15    months. *Id.* For two of the three requests, the Department's responses came after the

16    filing of this lawsuit. In all three instances, the Department concluded that no responsive

17    records were found.  Plaintiffs filed this action in May 2022, challenging the

18    Department's FOIA processing and determinations.

19    First, Plaintiffs alleged that Defendant failed to make a determination within 20

20    business days of its receipt of all three FOIA requests, in violation of 5 U.S.C. §

21    552(a)(6)(A)(i). Second, Plaintiffs alleged that the Department failed to conduct an

22    adequate search for records responsive to their requests, in violation of 5 U.S.C. §

23    552(a)(3). Third, they alleged that the Department improperly withheld non-exempt

24    responsive records, in violation of 5 U.S.C. § 552(d).

25    Through this litigation, the Department conducted supplemental searches, located

26    responsive documents, and produced approximately 140 pages of documents to Plaintiffs,

27    portions of which were redacted pursuant to FOIA exemptions. On the parties' summary

28    judgment motions, the Court ruled in favor of Plaintiffs on the first cause of action,

1

1    holding that the Department failed to make timely determinations and thus violated

2    FOIA. *See* First Order at 22-24. In granting Plaintiffs declaratory relief, the Court noted

3    that it took "months into the litigation before the State Department made determinations

4    and many more months before it disclosed documents." First Order at 22. The Court also

5    explained how the "State Department's position . . . continued to fluctuate," that its

6    "initial determinations—that no responsive records were located—were undercut by

7    supplemental searches and disclosures," and that its explanations for the delay were

8    inadequate. *Id*. at 22-23.

9        As to the second cause of action, the Court ruled in favor of Defendants. In

10    reaching its conclusion, the Court highlighted the Department's contradictory

11    representations about "what systems were searched for which requests," and the

12    discrepancies and errors in the record that made it difficult for the Court to determine

13    "what portions of Defendant's agency affidavits to credit." *See* First Order at 25-26.

14    Because Plaintiffs did not dispute the adequacy of the search methodology, the Court

15    ultimately concluded—in "a close call"—that the Department's searches were adequate.

16    *Id.* at 28.

17        The Court then examined the Department's redactions *in camera* and found that

18    the redactions were appropriate, granting summary judgment in favor of Defendant on

19    the third cause of action. *See generally* Second Order.

20        On July 21, 2023, Plaintiffs filed a Motion for Attorneys' Fees and Costs

21    ("Motion" or "Mot.") (Dkt. 50). On July 31, 2023, Defendant opposed the Motion

22    ("Opp'n") (Dkt. 51). On August 8, 2023, Plaintiff filed a reply ("Reply") (Dkt. 52). The

23    Court heard oral argument on August 17, 2023.

24    **I.    LEGAL STANDARD**

25        For a plaintiff to recover attorneys' fees or costs in a FOIA action, the court must

26    determine that the plaintiff is both "eligible" and "entitled" to such an award. First, the

27    plaintiff must show that they are "eligible" for an award by demonstrating that they

28    substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i). Second, the plaintiff must show that

1    they are "entitled" to an award. *See Schoenberg v. Fed. Bureau of Investigation*, 2 F.4th

2    1270, 1275–76 (9th Cir. 2021). Four non-exhaustive factors inform the "entitlement"

3    prong of the inquiry: "(1) the public benefit from disclosure, (2) any commercial benefit

4    to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the

5    disclosed records, and (4) whether the government's withholding of the records had a

6    reasonable basis in law." *Id.* (citation and internal quotation marks omitted). The court

7    may also "take into consideration whatever factors it deems relevant in determining

8    whether an award of attorney's fees is appropriate." *Long v. IRS*, 932 F.2d 1309, 1313

9    (9th Cir. 1991) (per curiam) (internal quotation marks and citation omitted).

10           If a court determines that a party is both eligible and entitled to receive fees, that

11   party "must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the

12   number of hours expended and (b) the hourly fee claimed." *Long*, 932 F.2d at 1313–14. If

13   these two figures are reasonable in light of the difficulty of the case and the skill of the

14   attorneys involved, there is a "strong presumption" that their product "represents a

15   reasonable award." *Id*. at 1314. A court may revise upward or downward the resulting

16   "lodestar figure" if "factors relating to the nature and difficulty of the case overcome this

17   strong presumption and indicate that such an adjustment is necessary." *Id*.

18           **II.      DISCUSSION**

19           Plaintiffs request attorneys' fees and costs in the amount of $81,945.00. At the

20   motion hearing, the State Department conceded that Plaintiffs "substantially prevailed"

21   and are thus eligible for an award under FOIA. The Department argues, however, that

22   Plaintiffs are not entitled to an award because there was little public benefit from

23   Plaintiffs' victory and the Department had a reasonable basis for withholding the

24   documents. Even if Plaintiffs were entitled to an award, the Department maintains that

25   the amount requested is unreasonable.

26           As set forth below, the Court finds that the entitlement factors weigh in favor of an

27   award. Upon reviewing the attorney bills submitted by Plaintiffs, the Court also finds that

28   the amount requested is reasonable.

1

### A. Entitlement to Attorneys' Fees under FOIA

2

### i. Public Benefit

3    "[T]he 'public benefit' criterion 'speaks for an award (of attorneys' fees) where

4    the complainant's victory is likely to add to the fund of information that citizens may use

5    in making vital political choices.'" *Klamath Water Users Protective Ass'n v. U.S. Dep't*

6    *of the Interior*, 18 Fed. Appx. 473, 475 (9th Cir. 2001) (quoting *Fenster v. Brown*, 617

7    F.2d 740, 744 (D.C. Cir. 1979)). "The information need not be of public interest as long

8    as there is a public benefit from the fact of its disclosure." *O'Neill, Lysaght & Sun v.*

9    *DEA*, 951 F. Supp. 1413, 1423 (C.D. Cal. 1996) (citing *Church of Scientology*, 700 F.2d

10   at 493). Courts have "stressed that in weighing the public benefit factor the district court

11   should take into account the degree of dissemination and the likely public impact that

12   might result from disclosure." *Church of Scientology*, 700 F.2d at 493 (citation omitted);

13   *see also O'Neill, Lysaght & Sun*, 951 F. Supp. at 1424 ("Courts look to the dissemination

14   and public impact from disclosure."). The fact that information is already in the public

15   domain weighs against the public benefit from disclosure. *See Tax Analysts v. U.S. Dep't*

16   *of Justice*, 759 F. Supp. 28, 30 (D.D.C. 1991).

17        Plaintiffs argue that this factor weighs in favor of an award because the FOIA

18   requests sought "to evaluate issues relating to Hunter Biden, his father, President Joe

19   Biden, their ties to foreign interests, and other matters of public concern." Mot. at 12.

20   Plaintiffs reference their open-source publication, the "Biden-Ukraine Corruption Inquiry

21   Report," which is a 72-page report purporting to outline the "substantial and compelling

22   evidence [] support[ing] an independent investigation into Hunter Biden and his

23   associates for potential violations of federal law in connection with their work on behalf

24   of foreign entity Burisma Holdings." *See* Ex. 16 to Pls.' Mot. for Summ. J. (Dkt. 34-5) at

25   223. Plaintiffs contend that the documents produced through this litigation were valuable

26   in disproving the claims that "meetings between Hunter Biden and Antony Blinken were

27   an unproven conspiracy theory" as well as confirming the authenticity of recently

28   discovered emails on Hunter Biden's laptop. Reply at 6.

1    The State Department argues that the disclosure yielded little public benefit. They

2    assert that "the documents and information at issue are not particularly illuminating to the

3    public" and that "much of the information was already publicly available." Opp'n at 7.

4    By way of example, the Department highlights the "lack of substantive importance" in

5    the emails setting up a lunch with Mr. Blinken and Hunter Biden in May 2015, noting

6    that the fact that "Mr. Blinken was offered seared salmon or lamb for the lunch . . . is not

7    an issue of any public importance." Opp'n at 9.

8    In determining whether the public-factor weighs in favor of an award, courts focus

9    on "the potential public value of the information sought . . . not the public value of the

10    information received." *Morley v. C.I.A.*, 810 F.3d 841, 844 (D.C. Cir. 2016) (citation and

11    internal quotation marks omitted). This factor is satisfied so long as the *request* has "at

12    least a modest probability of generating useful information." *Morley v. C.I.A.*, 894 F.3d

13    389, 392 (D.C. Cir. 2018) (internal quotation marks and citation omitted).

14    Here, all three requests had "at least a modest probability of generating useful

15    information." *Morley*, 894 F.3d at 392. Against the backdrop of the ongoing military

16    situation in Ukraine, Plaintiffs stated they wanted to know "how fully enmeshed" the son

17    of then-Vice President, currently President, Joseph Biden was "with the Ukrainian energy

18    company" and whether he tried to exert any influence "over official government policy

19    due to his father's office." *See* First Order at 11 (quoting Third FOIA Receipt (Mar. 4,

20    2022), Pls.' Ex. 3 (Dkt. 34-5 at 13-14)). Plaintiffs note that at the time of their requests,

21    there were only "unconfirmed reports that Biden had a lunch with Blinken." Reply at 8.

22    But "Plaintiffs wanted independent confirmation—direct evidence—of that meeting." *Id.*

23    At a minimum, this litigation resulted in newly released information that

24    confirmed meetings took place between Hunter Biden and Antony Blinken, corroborating

25    the portion of Plaintiffs' publication that "Hunter Biden [] potentially engaged directly

26    with U.S. government officials." *See* Ex. 16 to Pls.' Mot. for Summ. J. (Dkt. 34-5) at 258.

27    Because Plaintiffs sought and obtained information on a matter of national interest, the

28    public benefit factor weighs in favor of an award. *Compare Davy v. C.I.A.*, 550 F.3d

1   1155, 1159–60 (D.C. Cir. 2008) (finding public benefit where "some of the material

2   turned over to [plaintiff] concerns an event of national importance and is newly

3   released") *with People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, No.

4   CIV.A. 03-195 (SBC), 2006 WL 508332, at *4 (D.D.C. Mar. 1, 2006) (finding no public

5   benefit where "no one from the public shared plaintiff's suspicion").

6        In weighing the public value of the information sought, the Department's own

7   view as to the importance of the records is not determinative. Courts in this circuit

8   consider the public benefit factor in conjunction with "the criteria listed in the Senate

9   Judiciary Committee's Report on the Freedom of Information Act." *See Church of*

10  *Scientolog*y, 700 F.2d 486, 492 (9th Cir. 1983). Explaining the public-benefit criterion,

11  the committee contrasted a situation where "a public interest group was seeking

12  information to further a project benefitting the general public" with a situation where "a

13  business was using the FOIA to obtain data relating to a competitor or as a substitute for

14  discovery in private litigation with the government." *See Church of Scientology*, 700 F.2d

15  at 492 n. 6 (citing S.Rep. No. 93–854, 93rd Cong. 2nd Sess. 19 (1974)). Because

16  Plaintiffs are a nonprofit organization seeking information related to potential corruption,

17  Plaintiffs are more like the former than the latter.

18       Accordingly, the Court finds this factor weighs in favor of a fee award.

19       **ii.   Commercial Benefit and Nature of Plaintiff's Interest**

20       The second and third factors—the commercial benefit factor and the nature of the

21  plaintiffs' interest factor—are closely related and often considered together. Generally,

22  "where plaintiff is indigent or a nonprofit public interest group, an award of attorney's

23  fees furthers the FOIA policy of expanding access to government information." *Church*

24  *of Scientology*, 700 F.2d at 494. As the Ninth Circuit has instructed, courts "should

25  generally award fees if the complainant's interest in the information sought

26  was . . . public-oriented." *Long*, 932 F.2d at 1316 (quoting *Church of Scientology*, 700

27  F.2d at 496 n. 6).

28       Here, Defendant does not dispute that Plaintiff USJF is "a nonprofit public

1  interest, legal action organization." Mot. at 12. Defendant argues, however, that the

2  factors are neutral given Plaintiffs' fundraising efforts and "broad references to their own

3  publication." Opp'n at 8-9. The Court finds that Plaintiffs' mention of this litigation in its

4  fundraising efforts does not render the nature of its interest "commercial*." See Elec. Priv.

5  Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 234 (D.D.C. 2015) (rejecting "the

6  proposition that a non-profit organization's success at obtaining the release of documents

7  should be held against it when that same organization mentions such success indirectly in

8  its fundraising appeals"); *Davy II*, 550 F.3d at 1160–61 (finding that the intention to

9  publish a book does not mean the nature of plaintiff's interest was "purely commercial"

10  and to the extent plaintiff had "a scholarly interest in publishing publicly valuable

11  information in a book, his interest [was] at most 'quasi-commercial'). Nor is Plaintiffs'

12  interest simply a personal one. As explained above, it is one that may be shared with

13  others interested in the Biden-Ukraine inquiry.

14      Because Defendant fails to provide evidence of any private or commercial interest

15  underlying Plaintiffs' litigation of this case, the second and third factors favor an award.

16      **iii.   Legal Basis for Department's Withholding of Records**

17      Under the fourth entitlement factor, "a court would not award fees where the

18  government's withholding had a colorable basis in law but would ordinarily award them

19  if the withholding appeared to be merely to avoid embarrassment or to frustrate the

20  requester." *Schoenberg v. Fed. Bureau of Investigation*, 2 F.4th 1270, 1276 (9th Cir.

21  2021) (citation and internal quotation marks omitted). An agency "must analyze the

22  relevant law and base its nondisclosure on legal authority that reasonably applies." *Id.*

23  (citation and internal quotation marks omitted). In making this inquiry, the district court

24  "must decide whether it was reasonable for the agency to rely on that authority" and "can

25  only consider authority the agency relied on and any contrary authority the plaintiff

26  cites." *Id*. As the Ninth Circuit emphasized, "the lodestar of this analysis is not whether

27  the agency was correct, but whether the application of its legal basis was 'colorable.'" *Id*.

28      The Court previously found the Department's search was adequate but noted the

1   discrepancies in the Department's agency affidavits as to "what systems were searched

2   for which requests." *See* First Order at 25. The question now is whether the State

3   Department had a "colorable" legal basis for failing to disclose responsive documents

4   until after Plaintiffs filed this action, failing to locate responsive records prior to its

5   supplemental searches, and incorrectly determining that certain records were not

6   responsive. The Court finds that no colorable legal basis supported the agency's

7   decisions.

8          First, the Department previously stated that it withheld the emails setting up a

9   meeting between Hunter Biden and Mr. Blinken in 2015 because they were not

10  responsive to Plaintiffs' requests. *See* Def.'s Opp'n to Pls.' Mot. for Summ. J. (Dkt. 38) at

11  5. For background, Plaintiff's third FOIA request sought "calendar entries, sign-in logs,

12  and meeting logs for Mr. Anthony Blinken, then-deputy Secretary of State that reference,

13  and or include, the terms . . . 'Hunter Biden'." First Order at 10-11. The State

14  Department's search turned up the emails at issue, but the agency determined that the

15  documents "do not fall within the terms of Plaintiffs' FOIA request" because "Hunter

16  Biden is not copied on any of the emails" and "the emails do not contain calendar entries,

17  sign -in logs, or meeting logs." First Order at 13. The Department explains that emails

18  containing *meeting schedules* are different from Plaintiffs' requested *calendar entries*.

19  *See* Def.'s Opp'n to Pls.' Mot. for Summ. J. (Dkt. 38) at 5 n.2 (stating that the emails

20  were produced "in order to avoid any lingering question about their responsiveness");

21  Decl. in Supp. of Opp'n to Mot. for Attorneys' Fees (Dkt. 51-1) ¶ 4 (same).

22         In declining to produce the documents at issue, the agency's rigid adherence to the

23  letter of the request contravenes the agency's obligation to construe FOIA in a manner

24  that "ensure[s] an informed citizenry, vital to the functioning of a democratic society,

25  needed to check against corruption and to hold the governors accountable to the

26  governed." *Yagman v. Pompeo*, 868 F.3d 1075, 1079-80 (9th Cir. 2017) (citing *NLRB v.*

27  *Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)) (internal quotation marks

28  omitted). Specifically, Defendant's decision to exclude "schedules" because the FOIA

1   requests only asked for "calendar entries, sign-in logs, and meeting logs" was an

2   unreasonable interpretation of the request. A common-sense reading of the request

3   reveals its obvious essence—which was to determine the extent of relations between

4   Hunter Biden and officials in Ukraine and "what influence he tried to exert over official

5   government policy due to his father's office." First Order at 11. The emails eventually

6   disclosed by the Department plainly fall within this request. Defendant's determination

7   otherwise has no reasonable basis in law.

8          Second, the Department maintains that the emails are nonresponsive "but were

9   released anyway because of their lack of substantive importance." *See id*. at 8 n. 1. The

10  agency's view of whether the emails were particularly illuminating is not a reasonable

11  basis to withhold documents. To reiterate, FOIA is a means for citizens to know "what

12  their Government is up to." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171–

13  72 (2004) (citation omitted). "The phrase should not be dismissed as a convenient

14  formalism. It defines a structural necessity in a real democracy." *Id.* at 172. So, "when

15  documents are within FOIA's disclosure provisions," that information belongs to citizens

16  "to do with as they choose." *Id.* "If the information is subject to disclosure, it belongs to

17  all." *Id.* Defendant here does not argue that the information was not subject to disclosure.

18  Defendant's justification for withholding documents because the documents lacked

19  substantive importance is thus legally insufficient.

20         Third, the Department previously cited "a significant FOIA backlog and the

21  impact of the COVID-19 pandemic on the Department's FOIA operations" as a reason

22  for the delay. *See* First Order at 23-24. But as the Court previously noted, and Plaintiffs

23  pointed out at the motion hearing, "Plaintiffs' First FOIA Request was submitted on the

24  same day as the Second FOIA Request, both received immediately prior to the COVID-

25  19 pandemic." *Id.* (internal quotation marks omitted). "It remains unclear, then, why the

26  State Department's response to the First FOIA Request came two years later . . . ." *Id.*

27         In the end, the Department fails to identify a sufficient legal basis for withholding

28  the 2015 emails or any of the other documents it ultimately determined were responsive.

1    The Department (1) missed the 20–day statutory deadline to respond; (2) declined to

2    produce any documents before being sued; and (3) incorrectly determined that records

3    were non-responsive. Although the Court found the Department's redactions were

4    appropriate, the Department's errors collectively tip the fourth factor in favor of an

5    award.

### B.  Reasonableness of the Requested Fees

7        Once the Court determines that attorneys' fees are warranted, the Court must then

8    assess whether the amount of fees requested are reasonable. Counsel bears the burden of

9    establishing that the number of hours expended is reasonable by submitting detailed time

10   records justifying the hours claimed to have been expended. *Chalmers v. City of Los*

11   *Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The party requesting fees first must prove

12   the hourly rate and number of hours that go into the lodestar calculation are reasonable

13   themselves. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The

14   amount may be reduced if the hours are duplicative, excessive, or otherwise unnecessary.

15   *Id.*; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

16       Plaintiffs request attorneys' fees and costs in the amount of $81,945.00 as follows:

17       • $71,816.50 for lead counsel based on 120.7 hours at $595 per hour;

18       • $9,651.50 for co-counsel based on 19.9 hours at $485 per hour; and

19       • $477.00 of costs.

20       Defendant argues that the amount requested is unwarranted for four reasons. First,

21   Defendant argues that the fees cover work performed on issues on which Plaintiffs did

22   not prevail. Second, Defendant argues that plaintiffs seek fees for work that was

23   duplicative or unnecessary. Third, Defendant contends that lead counsel's hourly rate of

24   $595 per hour is excessive. And, finally, Defendant argues that Plaintiffs' request for

25   "fees-on-fees" is unreasonably inflated. *See generally* Opp'n. The Court addresses each

26   argument in turn.

### i.  The Degree of Success Obtained

28       Defendant urges against awarding Plaintiffs fees for time spent on efforts that did

1  not "materially advance[] the litigation," such as "[u]rging the Court to expand the scope

2  of their FOIA requests to include terms and subject matter not covered by their original

3  FOIA requests," "[c]hallenging the adequacy of Defendant's searches on summary

4  judgment, "[c]hallenging the propriety of Defendant's redactions of released records,

5  "[u]rging the Court to reopen discovery proceedings and permit amendment of their

6  Complaint during the pendency of cross-summary judgment motions based on a Fox

7  News report about Hunter Biden's given name." *See* Opp'n at 12-13.

8      Defendant's ultimate complaint is about the adversarial tenor of this case—not the

9  degree of success Plaintiffs achieved. That Plaintiffs prevailed on key issues and obtained

10  the documents they sought is sufficient to warrant an award.

### ii. Duplicative and Unnecessary Work

12      Plaintiffs' lead counsel seeks to recover fees for 61.2 hours expended prior to

13  obtaining documents from Defendant, 35 hours litigating the cross-motions for summary

14  judgment, and 24.5 hours in anticipation of litigating fees. *See* Mot. at 15-19. Plaintiffs'

15  co-counsel seeks to recover 19.9 hours in fees. *Id*. Defendant argues that "Plaintiffs'

16  counsel spent unreasonable amounts of time performing duplicative and unnecessary

17  work." *See* Opp'n at 12-14. Specifically, Defendant argues that counsel unreasonably

18  claims 17.1 hours of work on two joint reports and that the Court "should disallow all

19  time spent on Plaintiffs' summary judgment motion briefing because there was no need

20  to brief these issues for summary judgment." *Id.* at 13-14.

21      The party seeking fees bears the burden of establishing the hours expended

22  litigating the case and must provide detailed time records documenting the tasks

23  completed and the amount of time spent. *See Hensley*, 461 U.S. at 434. The district court

24  "may not uncritically accept a fee request" but is obligated to review the time billed and

25  assess whether it is reasonable in light of the work performed and the context of the case.

26  *Common Cause v. Jones*, 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2001) (citing *Sealy, Inc.

27  v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir.1984)); *see also McGrath v. County of

28  Nevada*, 67 F.3d 248, 254 n. 5 (9th Cir.1995) (noting that court may not adopt prevailing

11

1  party's representations without conducting an independent review of the fee application).

2       "In fulfilling this responsibility, district courts have broad discretion to reduce the

3  number of billable hours awarded. Courts have reduced fee awards where prevailing

4  counsel engaged in inefficient or unreasonably duplicative billing, or where counsel's

5  billing records contain insufficiently descriptive entries, show evidence of block billing,

6  or billing in large time increments." *See Cotton*, 889 F.Supp.2d at 1176; *Gates v.*

7  *Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (holding that court may make across-

8  the-board percentage cuts in the number of hours claimed as a practical means of

9  "trimming the fat" from a fee application); *AjaxoInc. v. Bank of Tech. and Operations*,

10  Inc., No. CIV-S-07-0945-GEB GGH, 2008WL 11387092, at *5 (E.D. Cal. Oct. 2, 2008)

11  ("Counsel may not be compensated for excessive, redundant, inadequately documented,

12  or unnecessary hours."); *DishNetwork L.L.C. v. Jadoo TV, Inc.*, No. 2:18-cv-9768-FMO

13  (KSx), 2019 WL7166067, at *5-6 (C.D. Cal. 2019) (holding that only time spent

14  preparing the actual motion to be compensable, eliminating time for meet and confer, and

15  finding that 137.2 "total hours" as well as lesser 65.2 "requested hours" was unreasonable

16  for straightforward discovery motion).

17       The Court finds that Plaintiffs' counsel and co-counsel sufficiently describe the

18  time they expended on the case and exercised appropriate billing judgment to account for

19  inefficiency, waste, and duplication. For example, although lead counsel "expended 72.4

20  hours litigating the parties' cross-summary judgment motions, he has discounted that

21  time substantially, billing for only 35 of those hours." Mot. at 17. Counsel additionally

22  notes that the "discounts" seek to "apportion time between Plaintiffs' successful and

23  unsuccessful claims . . . and write-off time that should not be billed at all." *Id.*

24       Given the facts of this case and the results Plaintiffs achieved, the Court finds the

25  amount of time counsel expended to be reasonable.

### iii. Reasonableness of Hourly Rates

27       To determine a reasonable hourly rate for the fee applicant's services, the Court

28  examines the prevailing market rates in the relevant community charged for similar

1   services by "lawyers of reasonably comparable skill, experience and reputation." *See*

2   *Hensley*, 461 U.S. at 433. The "relevant community" is the district in which the lawsuit

3   proceeds—here, the Central District of California. *See Barjon v. Dalton*, 132 F.3d 496,

4   500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence,

5   in addition to the affidavits of its attorneys, that the requested rates are appropriate." *Id*.

6   "A district court also may consider its own expert knowledge and experience in setting a

7   [reasonable] hourly rate." *Id*. (citing *Ingram v. Oroudjian*, 647 F.3d 925,928 (9th Cir.

8   2011); *see also Genesis 1 Oil Servs. LLC v. Wismann Group, LLC*, No. 8:20-02114 SSS

9   (ADSx), 2023 WL 4317192, at *3 (C.D. Cal. 2023) ("When the requesting party fails to

10  meet its burden, the court may exercise its discretion to determine reasonable hourly rates

11  based on its experience and knowledge of prevailing rates in the community.").

12      In the Central District of California, hourly rates of $900 to $1,000 for partners

13  and $800-$900 for senior associates is not extraordinary. *See Jose Luis V.H. v. Kijakazi*,

14  No. CV18-2618-KS, 2022 WL 17100473, at *4 (C.D. Cal. Sept. 30, 2022) ("The Ninth

15  Circuit has found reasonable fees with effective hourly rates exceeding $900, and district

16  courts have repeatedly found reasonable fees with effective hourly rates exceeding

17  $1,000 per hour.") (collecting cases); *Snow Joe, LLC v. Linemart Inc.*, No. CV 20-00587-

18  RSWL-RAOx, 2022 WL 3446032, at *2 (C.D. Cal. Aug. 16, 2022) (identifying cases

19  holding reasonable hourly rates for senior attorneys in this district to be over $700).

20      Plaintiffs' lead counsel here billed $585 hourly for time expended on the case and

21  co-counsel billed $485 hourly. The Court finds that the hourly rates are in line with those

22  prevailing in the community for similar services and therefore are reasonable.

23                          **iv.   Fees-on-Fees**

24      Plaintiffs may recover attorneys' fees for time reasonably expended on a motion

25  for attorneys' fees and costs. *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir.1990). An

26  inflated request for a "fees-on-fees" award, however, may be reduced to an amount

27  deemed reasonable by the awarding court. *See Jadwin v. County of Kern*, 767 F.Supp.2d

28  1069, 1140 (E.D. Cal. 2011) (denying attorneys' motion for "fees-on-fees" due to lack of

1   a reasonable basis for such an award where "briefing was underdeveloped and willfully,

2   perhaps intentionally, non-responsive to the Court's requests for supplemental billing

3   information, which were expressly made to afford Plaintiff a full opportunity to justify

4   and prove his attorneys' fees request and to comply with Ninth Circuit law"); *Serrano v.*

5   *Unruh*, 32 Cal. 3d 621, 635 (1982) ("Prevailing parties are compensated for hours

6   reasonably spent on fee-related issues. A fee request that appears unreasonably inflated is

7   a special circumstance permitting the trial court to reduce the award or deny one

8   altogether.").

9       Plaintiffs' counsel seeks to recover fees for 24.5 hours he reasonably expended

10   and anticipated expending in litigating fees. After a review of the billing entries related to

11   fees-on-fees, the Court finds the 24.5 hours requested by lead counsel to be reasonable.

12   *See Columbia Riverkeeper v. U.S. Army Corps of Engineers*, No. 3:13-CV-01494-PK,

13   2015 WL 2095223, at *5 (D. Or. May 5, 2015) (awarding attorney 22 hours for work

14   performed in preparing fee petition).

15                      **v.  Litigation Costs**

16       Looking to the operative language in the FOIA fee-award statute, recovery is

17   allowed for "litigation costs." 5 U.S.C. 552(a)(4)(E)(i). The costs identified by Plaintiffs

18   include the $402 filing fee and $75 for service of process. Defendant does not object to

19   Plaintiffs' request for costs.

20       Accordingly, the Court awards Plaintiffs $477 for costs that were reasonably

21   incurred.

22

23

24

25

26

27

28

## IV.   DISPOSITION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion (Dkt. 50) and awards Plaintiffs a total of $81,945.00 in fees and costs.


DATED: August 22, 2023

_David O. Carter_

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE